# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| QUINTIN C. GRAY, SR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:15-CV-00835-NCC |
| ) | |
| JEFF NORMAN,[1] ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 17). After reviewing the case, the Court has determined that Petitioner is not entitled to relief. As a result, the Court will **DENY** the Petition and **DISMISS** the case.

### I. BACKGROUND

On December 18, 2009, Petitioner was convicted by a jury in the Circuit Court of St. Louis City, of one count of second degree murder and abuse of a child resulting in death (Doc. 8-4 at 4). On February 19, 2010, the Circuit Court sentenced Petitioner to concurrent terms of twenty-five years in the custody of the Missouri Department of Corrections on each count (Doc. 8-5 at 64-67). Petitioner appealed the judgment on January 19, 2011, raising six claims:

> (1) The trial court erred in precluding Petitioner from introducing and playing Petitioner's 911 call because the 911 call contained statements that qualified under the excited utterance exception to hearsay and it was fundamentally unfair to prohibit the admission of the 911 tape as an exhibit in that it substantially prejudiced Petitioner and affected the outcome of the trial;

---

[1] Petitioner is currently incarcerated at South Central Correctional Center in Licking, Missouri. Jeff Norman is the Warden and proper party respondent. 28 U.S.C. § 2254, Rule 2(a).

(2) The trial court erred in precluding Petitioner from introducing and playing Petitioner's reenactment video because the reenactment video was a part of the police investigation, the State opened the door to this evidence, and it was fundamentally unfair to prohibit the admission of Petitioner's reenactment video;

(3) The trial court erred and abused its discretion in overruling Petitioner's objection and request for a mistrial when the prosecutor elicited evidence from Ashley, the victim's mother, and Vicki, the victim's grandmother, that Petitioner had burned the victim's ("M.T.")[2] hand with hot water because the evidence was not legally relevant, was more prejudicial than probative of Petitioner's commission of the charged crimes, and deprived Petitioner of his rights to due process, to a fair trial, and to be tried only for the charged offenses;

(4) The trial court erred and abused its discretion in permitting Dr. James Gerard to testify over defense counsel's objection that injuries on M.T. were indicative of child abuse in violation of Petitioner's rights to due process of law, to a fair trial, and to be judged by a fair and impartial fact-finder;

(5) The trial court abused its discretion in excluding Dr. Thomas Young's testimony that (1) M.T.'s liver lacerations were caused by improper CPR; (2) the cause of death was undetermined because he knew that M.T. went into cardiac arrest and the liver laceration did not produce enough blood to cause her death; (3) without more information, he could not tell what the actual cause of death because he did not have enough heart tissue with which to decide what caused her heart to stop; and (4) M.T.'s postmortem injuries would have been from the fall in the bathroom when she hit her forehead and her face on the faucet after she went into cardiac arrest and any splashing of water to the face could have deluded the postmortem appearance of her facial injuries in violation of Petitioner's rights to due process of law, a fair trial, and to be judged by a fair and impartial fact-finder; and

(6) The trial court erred in denying Petitioner's motion for judgment of acquittal at the close of the evidence and in entering judgment and sentence against Petitioner for conventional murder in the second degree and abuse of a child resulting in death, in violation of Petitioner's rights against double jeopardy, to due process and to a fair trial.

(Doc. 8-7). On May 17, 2011, the Missouri Court of Appeals affirmed Petitioner's conviction and sentence on direct appeal (Doc. 8-9; *State v. Gray*, 347 S.W.3d 490 (Mo. Ct. App. 2011)).

On November 14, 2011, Petitioner filed a *pro se* motion for post-conviction relief (Doc. 8-10 at 5-10). On July 22, 2013, with the assistance of counsel, Petitioner filed an amended motion for post-conviction relief (*Id.* at 15-25). On September 17, 2013, without an evidentiary

---
[2] The Court will follow the practice of the state courts in identifying the victim only by her initials and her mother and grandmother only by their first names.

hearing, the motion court denied Petitioner's amended motion (*Id.* at 26-33). On July 7, 2014, Petitioner, with the assistance of counsel, filed an appeal raising two grounds for relief:

> (1) The motion court clearly erred in denying Petitioner's motion for post-conviction relief without an evidentiary hearing because it violated his rights to due process and effective assistance of counsel in that trial counsel failed to object to the testimony of Junior (Quintin Gray, Jr.) on the grounds that he was not competent to testify pursuant to Mo. Rev. Stat. § 491.060; and
>
> (2) The motion court clearly erred in denying Petitioner's motion for post-conviction relief without an evidentiary hearing because it violated his rights to due process and effective assistance of counsel in that trial counsel improperly advised Mr. Gray not to testify on his own behalf because of his extensive criminal history.

(Doc. 8-11). On November 14, 2014, the Missouri Court of Appeals for the Eastern District affirmed the motion court's denial of the motion (Doc. 8-13; *Gray v. State*, 475 S.W.3d 676 (Mo. Ct. App. 2014)).

On May 26, 2015, Petitioner filed his Petitioner under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody raising the following six grounds for relief:

> (1) The Missouri state court decisions unreasonably applied clearly established federal law when the trial court precluded Petitioner from introducing a 911 call resulting in a violation of due process and destructive prejudice to the adversary process;
>
> (2) The Missouri state court's determination resulted in an unreasonable application of established federal law prohibiting Petitioner's counsel from introducing and playing the police investigation reenactment video;
>
> (3) The Missouri state court's determinations resulted in an unreasonable application of established federal law sustaining the trial court's error and abuse of discretion overruling Petitioner's objection and request for mistrial when the prosecutor elicited damaging evidence from a testifying witness caused cataclysmic prejudice to Petitioner's constitutional rights to a fair trial and due process;
>
> (4) The Missouri appeals court decisions resulted in an unreasonable application for the federal law upholding the trial court's error permitting Dr. James Gerard to testify that injuries on the victim were indicative of child abuse resulting in a violation of due process and creating colossal prejudice;
>
> (5) An unreasonable application of established supreme court law arose when the Missouri Court of Appeals determined that the exclusion of Dr. Thomas Young's

3

testimony regarding the trauma and causes of death to the victim was a denial of due process and violation of the right to present a defense; and

(6) The Missouri appeals court determinations resulted in an unreasonable application of established federal law when the trial court erred in denying Petitioner's motion for judgment of acquittal at the close of the evidence against conventional murder in the 2nd degree and abuse of a child resulting in death in violation of double jeopardy.

(Doc. 1-1).[3]

## II. DISCUSSION

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively

---
[3] The Court notes that the Petition and associated Memorandum in Support of the Petition do not include any argument or documentation in support of Petitioner's six grounds. Therefore, the Court has largely copied these grounds verbatim from Petitioner's Memorandum in Support of his Petition and made an attempt, in light of Petitioner's *pro se* status, to liberally construe his alleged grounds for relief.

4

correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

**A. Non-Cognizable Claims**

Petitioner's Grounds 1-5 are not cognizable in a federal habeas corpus action. The United States Supreme Court has held that "'federal habeas corpus relief does not lie for errors of state law" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. *Scott v. Jones*, 915 F.2d 1188, 1190-91 (8th Cir. 1990); *Johnson v. Steele*, No. 4:11CV01022 SNLJ, 2014 WL 4627174, at *7 (E.D. Mo. Sept. 12, 2014). Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." *Evans v. Luebbers*, 371 F.3d 438, 443 (8th Cir. 2004) (citing *Estelle*, 502 U.S. at 68). In order to implicate a petitioner's constitutional due process rights, an evidentiary mistake must be "so egregious that [it] fatally infected the proceedings and rendered [Petitioner's] entire trial fundamentally unfair." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). *See Dowling v. United States*, 493 U.S. 342, 352-54 (1989) (noting that evidentiary issues only implicate the Due Process Clause where they threaten "fundamental conceptions of justice"). Upon a complete and thorough review of the record, the Court finds that the trial court's evidentiary determinations forming the basis of Grounds 1-5 do not rise to the level of egregiousness such that they rendered Petitioner's entire trial fundamentally unfair.

*Ground 1: The 911 Call*

In Ground 1, Petitioner asserts that the Missouri state court decision unreasonably applied clearly established federal law when the trial court precluded Petitioner from introducing a 911 call resulting in a violation of due process and destructive prejudice to the adversary process (Doc. 1-1). Specifically, upon review of Petitioner's direct appeal brief, Petitioner appears to argue that the 911 call would be admissible under the excited utterance exception to the hearsay rule (Doc. 8-7 at 39).

During trial, defense counsel requested that a tape of the 911 call Petitioner made the day of the incident be played to the jury (Doc. 8-2 at 3-4; Doc. 8-3 at 46). Although defense counsel admitted that the tape contained hearsay statements, as the call was placed by Petitioner, he asserted that the tape was admissible under the business records exception and under the excited utterance exception to the hearsay rule (*Id.*). The State objected to the admission of the tape, asserting that it contained self-serving hearsay (*Id.*). The trial court denied defense counsel's request (*Id.* at 4). Defense counsel made an offer of proof, providing the 911 call tape, and the tape was played outside the presence of the jury to the trial court (Doc. 8-3 at 46). The 911 call, as detailed by the Missouri Court of Appeals, is as follows:[4]

> On the 911 call, [Petitioner] requested an ambulance, stating that his daughter was not breathing. After giving the dispatcher his address, [Petitioner] stated that when he woke up he discovered that M.T. had made a bowel movement in her underwear and that he washed her up. [Petitioner] was interrupted by the dispatcher trying to ascertain [Petitioner's] contact information. [Petitioner] stated that M.T. was making noises and asked repeatedly if that meant that she was still alive. [Petitioner] stated that he was doing CPR. The dispatcher gave [Petitioner] instructions on how to breathe into M.T.'s mouth and give her chest compressions. The dispatcher asked [Petitioner] how long he had been doing CPR and [Petitioner] responded "about 10 minutes." The dispatcher asked

---

[4] The Court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Petitioner has not rebutted the presumption of any factual determinations of the state courts here and, as such, the Court will, where relevant, rely on the state appellate court's factual determination.

6

> [Petitioner] what had happened, and [Petitioner] said that he had no idea but that M.T. woke up light-headed and had a bowel movement in her underwear. [Petitioner] stated that he took M.T. into the bathroom, washed her, and that M.T. then started hitting her lip and her head on the bathtub.

(Doc. 8-9 at 10-11).

The trial court's evidentiary ruling was not so egregious that it rendered Petitioner's whole trial fundamentally unfair. The Missouri Court of Appeals on direct appeal determined that the trial court did not abuse its discretion in refusing to admit the 911 tape as an exception to the hearsay rule (Doc. 8-9 at 12). In doing so, the Missouri Court of Appeals found that, based on the evidence including the timing of the call, the context of Petitioner's statements during the call, and the trial court's ability to assess Petitioner's tone and statements at the time of the declaration, the trial court could properly find Petitioner's statements on the 911 tape to be the result of reflective thought and to not constitute an excited utterance (*Id.*). Of note, the Missouri Court of Appeals indicated that, "while some of [Petitioner's] statements were in response to the dispatcher's questions, [Petitioner] almost immediately and spontaneously offered substantial information to the dispatcher about the events that had transpired much earlier" (*Id.* at 11-12).

The explanation given by the Missouri Court of Appeals warrants deference and is not a contrary or unreasonable application of federal law. Federal Rule of Evidence 803(2) provides for the excited utterance exception to the hearsay rule. "Excited utterances under this Rule are statements relating to a startling event made while under the stress of excitement caused by the event." *United States v. Marrowbone*, 211 F.3d 452, 454 (8th Cir. 2000). "The rationale for this exception is that excited utterances are likely to be truthful because the stress from the event caused a spontaneous statement that was not the product of reflection and deliberation." *Id.* (citing *Reed v. Thalacker*, 198 F.3d 1058, 1061 (8th Cir. 1999)). Considerations for determining whether the excited utterance exception to the hearsay rule is applicable pursuant to Rule 803(2)

include whether the declarant was under the stress of excitement when he or she made the statements in question, the lapse of time between the startling event and the statements, whether the statements were made in response to an inquiry, the age of the declarant, the characteristics of the event, the physical and mental condition of the declarant, and the subject matter of the statements. *Id.* at 454.

Here, upon review of the 911 call, the Court finds there to be a significant gap in time between when the call starts and when the Petitioner seems emotional (Resp. Ex. E at 4:57). In fact, Petitioner initially reports that his daughter is not breathing and, before confirming his address or callback number with the 911 dispatcher, he starts to tell the 911 dispatcher his version of events (Resp. Ex. E at 0:23-1:11). Petitioner further reports to the dispatcher that he called approximately 10 minutes after starting CPR (Resp. Ex. E at 3:23). Although not dispositive, the lapse of time between the startling event and the out-of-court statement is relevant. *United States v. Iron Shell*, 633 F.2d 77, 85 (8th Cir. 1980). *See also cf. United States v. Graves,* 756 F.3d 602, 606 (8th Cir. 2014) (finding victim's statement to investigating police officer that defendant pointed a shotgun at her and threatened to shoot her were admissible under excited utterances exception to hearsay rule, even though the statements were made 30 minutes after the incident, and victim recanted her statements at trial, where defendant had discharged the shotgun several times after arguing with the victim, police officer testified that victim was still shaking and appeared to have been crying when he interviewed her, her answer was in response to a general question by the officer, and her statements indicated that the defendant had put the shotgun to her head). Furthermore, the Court finds Petitioner's provision of his version of events, even when in response to an inquiry by the dispatcher, to be self-serving (Resp. Ex. E at 0:23-1:11; 4:11-4:27). Whether a statement is self-serving is one factor to consider in

8

determining whether it is an excited utterance. *Smith v. Bowersox*, No. 4:12 CV 2089 DDN, 2014 WL 1377810, at *7 (E.D. Mo. Apr. 8, 2014). Therefore, the Court finds that the Missouri Court of Appeals' decision is not contrary to or an unreasonable application of the law and the Court will deny Ground 1 as not cognizable in a federal habeas petition.

*Ground 2: The Reenactment Video*

In Ground 2, Petitioner argues that the Missouri state court's determination resulted in an unreasonable application of established federal law prohibiting Petitioner's counsel from introducing and playing the police investigation reenactment video (Doc. 1-1). Upon review of Petitioner's brief on direct appeal, Petitioner appears to assert that the trial court unreasonably excluded the reenactment video because it was part of the police investigation and would therefore explain subsequent police conduct and present a complete picture of the event, and because the State opened the door when one of its witnesses addressed the tape during his testimony (Doc. 8-7 at 47-48).

During the State's direct examination, Detective Jimmy Hyatt ("Hyatt") testified about a reenactment video made with Petitioner (Doc. 8-1 at 102). Specifically, the following exchange occurred:

> Q. Can you describe to the jury what the purpose of having [the Evidence Technician Unit] come out to gather evidence?
>
> A. They seize the evidence located at any scenes and take prints, pictures, photographs, everything.
>
> Q. And what relevant things did you see in the apartment as to what happened that day?
>
> A. It was kind of hard to tell. We did a scene reenactment video.

(*Id.*). Detective Hyatt did a scene reenactment video with Petitioner before taking him to the homicide office for questioning on the day of M.T.'s death (*Id.*; Doc. 8-3 at 44). During a

sidebar regarding a separate issue, the State indicated to the trial court that Detective Hyatt mentioned the reenactment video despite being instructed otherwise (Doc. 8-1 at 103). The State asserted that while this occurred, "any further inquiry would be inappropriate at this time because it is still hearsay" (*Id.*). The trial court then heard from defense counsel who asserted that she would like to ask about the video without asking about the statements in the video (*Id.*). After some further argument, the trial court ruled that the state "glossed it over quickly enough" and determined that defense counsel could not cross-examine Detective Hyatt on the scene reenactment (*Id.*). Before the defense rested, defense counsel made an offer of proof, providing the reenactment video and questioning Detective Hyatt about the video, and the video was played outside the presence of the jury to the trial court (Doc. 8-3 at 44-46). The reenactment video, as detailed by the Missouri Court of Appeals, portrays the following:

> On the video, [Petitioner] stated that M.T. was unresponsive while still in bed, and was making a noise. [Petitioner] stated that M.T. had a bowel movement while in bed so he took her to the bathroom where she fell forward and hit her head while he was washing her. [Petitioner] stated that he tried to revive her and that before he called 911 he was not holding M.T.'s nose during CPR. In the video, [Petitioner] demonstrated how he pushed on M.T.'s chest as instructed by the 911 dispatcher.
>
> (Doc. 8-9 at 13).

The trial court's evidentiary ruling was not so egregious that it rendered Petitioner's whole trial fundamentally unfair. The Missouri Court of Appeals on direct appeal determined that the trial court did not abuse its discretion in finding that the reenactment video was inadmissible hearsay evidence and that the State did not open the door to admission of further evidence on the video (Doc. 8-9 at 14). In so doing, the Missouri Court of Appeals found that it was "clear" that Petitioner intended to offer the video for the truth of the matter asserted therein (*Id.* at 14). Specifically, the Missouri Court of Appeals indicated that "[Petitioner] fails to elucidate how his self-serving exculpatory statements made in the video explain the subsequent

police conduct or how the appearance of the apartment or himself on the day of M.T.'s death was necessary to show a complete picture of the events" (*Id.* at 13). Therefore, the Missouri Court of Appeals determined that the video was "nothing more than [Petitioner's] hearsay version of events" (*Id.* at 14). The Appellate Court further found that the detective's single accidental mention that a reenactment video was insufficient to open the door to the admission of the tape and Petitioner's statements therein (*Id.*).

The explanation given by the Missouri Court of Appeals warrants deference and is not a contrary or unreasonable application of federal law. First, the Court finds that the State did not open the door to the admission of the reenactment video. Cross-examination is limited to the subject matter of direct examination and matters affecting the credibility of the witness. Fed. R. Evid. 611. Here, Detective Hyatt made a single, accidental statement regarding the video and the prosecution continued on with its questioning without raising the video again (Doc. 8-9 at 13). Therefore, the reenactment video was not within the subject matter of direct examination. Second, while "'statements made by out-of- court declarants that explain subsequent police conduct are admissible, supplying relevant background and continuity,'" the Court finds that Petitioner fails to indicate how the self-serving statements in the video explain subsequent police conduct or present a complete picture of the event. *Irons v. Dormire*, No. 4:03CV513 CAS, 2006 WL 2811487, at *13 (E.D. Mo. Sept. 28, 2006) (citing *State v. Dunn*, 817 S.W.2d 241, 243 (Mo. 1991) (en banc)). Here, the video displays Petitioner's version of events, in his own words, and, as such, was offered to share his interpretation of the incident. Fed. R. Evid. 801 (Hearsay is a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement"). Therefore, the Court finds that the Missouri Court of Appeals' decision is not

11

contrary to or an unreasonable application of the law and the Court will deny Ground 2 as not cognizable in a federal habeas petition.

*Ground 3: Testimony Regarding a Burn on M.T.'s Hand*

In Ground 3, Petitioner asserts that the decision of the Missouri Court of Appeals resulted in an unreasonable application of established federal law sustaining the trial court's error and abuse of discretion overruling Petitioner's objection and request for mistrial when the prosecutor elicited damaging evidence from a testifying witness caused cataclysmic prejudice to Petitioner's constitutional rights to a fair trial and due process (Doc. 1-1). Although Petitioner fails to identify the testifying witness to which he refers, the Court will presume he means the testimony of Ashley, the victim's mother, regarding a burn she saw on M.T.'s hand because this is the undefaulted claim Petitioner raised before the state courts. To the extent that Petitioner may be asserting a claim as to the testimony of Vickie, victim's grandmother, regarding a burn on M.T's hand, such a claim has been procedurally defaulted because Petitioner failed to preserve it on appeal when he did not raise it in his motion for new trial. *Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015) (A federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error.").

During Ashley's testimony at trial, defense counsel requested a conference at the bench (Doc. 8-1 at 117). Defense counsel stated that it anticipated that the State would ask Ashley about a prior occasion involving a burn on M.T.'s hand and objected on the basis of relevancy and hearsay (*Id.*). The State argued that the evidence was admissible to show motive, intent or lack of mistake (*Id.*). The trial court ruled the evidence would be allowed (*Id.*). Ashley thereafter testified that she left M.T. with Petitioner on one prior occasion and, on that occasion,

when she returned home, she discovered a burn on M.T.'s hand (*Id.* at 117-18). Ashley further testified that M.T. told her that Petitioner burned her hand (*Id.*).

The trial court's evidentiary ruling was not so egregious that it rendered Petitioner's whole trial fundamentally unfair. The Missouri Court of Appeals determined that the trial court did not abuse its discretion in overruling Petitioner's objection to the testimony of Ashley regarding a burn on M.T.'s hand (Doc. 8-9 at 17). The Missouri Court of Appeals found that evidence that Petitioner injured M.T. in the recent past was admissible to show Petitioner's intent to cause serious physical injury or inflict cruel and inhuman punishment on M.T. (*Id.* at 16). The Missouri Court of Appeals further found that Ashely's testimony was limited and its probative value as to intent outweighed any alleged prejudicial effect (*Id.* at 16-17). The explanation given by the Missouri Court of Appeals warrants deference and is not a contrary or unreasonable application of federal law. Here, M.T.'s statement that Petitioner burned her hand was not offered for the truth asserted but rather to show motive, intent, or a lack of mistake. Therefore, the statement is not impermissible hearsay. *See* Fed. R. Evid. 801. Further, evidence of a past incident of potential child abuse in a case in which Petitioner is charged with child abuse resulting in death is not only clearly relevant but its probative value greatly outweighs any potential prejudice to the Petitioner. *See, e.g., United States v. Nadeau*, 598 F.3d 966, 969 (8th Cir. 2010) (finding the district court did not abuse its discretion in admitting a metal pipe found in a car parked in defendant's car, in prosecution for assault resulting in serious bodily injury and assault with a dangerous weapon, when the object matched the witnesses' description of the weapon used during the assault). Therefore, the Court finds that the Missouri Court of Appeals' decision is not contrary to or an unreasonable application of the law and the Court will deny Ground 3 as not cognizable in a federal habeas petition.

*Ground 4: Testimony of Dr. James Gerard*

In Ground 4, Petitioner argues that the Missouri appeals court decisions resulted in an unreasonable application for the federal law upholding the trial court's error permitting Dr. James Gerard ("Dr. Gerard") to testify that injuries on the victim were indicative of child abuse resulting in a violation of due process and creating colossal prejudice (Doc. 1-1). During trial, Petitioner asserted that M.T.'s external injuries were the result of normal childhood accidents and falls. Dr. Gerard testified that M.T.'s injuries were not consistent with a minor fall, hitting her head on something, or playing with dogs. Dr. Gerard stated that it was very unlikely that M.T. could have sustained all of these injuries, meaning multiple areas of abrasion and bruising on different planes, in one fall. Dr. Gerard also testified that he would "absolutely consider [M.T.'s injuries to be] consistent with abusive behavior or suspicion of abusive type of injuries" (Doc. 8-2 at 16).

The trial court's evidentiary ruling was not so egregious that it rendered Petitioner's whole trial fundamentally unfair. The Missouri Court of Appeals determined that the trial court did not err in permitting Dr. Gerard to testify that M.T.'s injuries were consistent with abusive behavior as it was admissible expert testimony and Dr. Gerard never opined as to Petitioner's guilt (Doc. 8-9 at 19). The explanation given by the Missouri Court of Appeals warrants deference and is not a contrary or unreasonable application of federal law. Indeed, Federal Rule of Evidence 702 permits the admission of a qualified expert may give opinion testimony if the expert's specialized knowledge would help the jury understand the evidence or decide a fact in issue. *United States v. Iron Hawk,* 612 F.3d 1031, 1038 (8th Cir. 2010). "Although an expert opinion is not inadmissible merely 'because it embraces an ultimate issue to be decided by the trier of fact,' not all expert opinions are admissible." *United States v. Whitted*, 11 F.3d 782, 785

14

(8th Cir. 1993) (citing Fed. R. Evid. 704(a)) (internal citations and quotations omitted). "Opinions that are 'phrased in terms of inadequately explored legal criteria' or that 'merely tell the jury what result to reach' are not deemed helpful to the jury and thus, are not admissible under Rule 702." *Id.* However, here, Dr. Gerard, based on his expertise, opined regarding the likely cause of M.T.'s injuries, an opinion well within the prevue of an expert. *See Iron Hawk,* 612 F.3d at 1038 (citing cases). Therefore, the Court finds that the Missouri Court of Appeals' decision is not contrary to or an unreasonable application of the law and the Court will deny Ground 4 as not cognizable in a federal habeas petition.

*Ground 5: Testimony of Dr. Thomas Young*

In Ground 5, Petitioner asserts that an unreasonable application of established supreme court law arose when the Missouri Court of Appeals determined that the exclusion of Dr. Thomas Young's ("Dr. Young") testimony regarding the trauma and causes of death to the victim was a denial of due process and violation of the right to present a defense (Doc. 1-1). On direct appeal, Petitioner specifically asserted that Dr. Young was impermissibly prohibited from testifying that (1) M.T.'s liver lacerations were caused by improper CPR; (2) the cause of death was undetermined because he knew that M.T. went into cardiac arrest and the liver laceration did not produce enough blood to cause her death; (3) without more information, he could not tell the actual cause of death because he did not have enough heart tissue with which to decide what caused her heart to stop; and (4) M.T.'s postmortem injuries were caused by the fall in the bathroom when she hit her forehead and her face on the faucet after she went into cardiac arrest and any splashing of water to the face could have deluded the postmortem appearance of her facial injuries (Doc. 8-7 at 64). As noted by Petitioner on direct appeal, during trial, Dr. Young

15

testified at length regarding CPR and its potential to cause liver lacerations (*Id.* at 64-65). Petitioner also conceded that Dr. Young testified at to the possible cause of M.T.'s injuries (*Id.*).

The trial court's evidentiary ruling was not so egregious that it rendered Petitioner's whole trial fundamentally unfair. The Missouri Court of Appeals found that Dr. Young testified as to most of the information Petitioner argued was otherwise excluded (Doc. 8-9 at 19). Specifically, the Court of Appeals noted that Dr. Young testified that:

> (1) M.T.'s liver lacerations were caused by CPR and that the administration of improper CPR, through incorrect hand placement and frantic compressions, can cause liver lacerations; (2) the liver lacerations did not cause M.T.'s death, and the amount of blood in M.T.'s abdomen was insufficient to cause shock and indicates that M.T.'s heart stopped before the liver was lacerated; (3) the cause of death was undetermined and he needed additional slides of heart tissue, which were unavailable, in order to determine what caused M.T.'s heart to stop; and (4) almost all of M.T.'s external injuries were postmortem and if a child went into cardiac arrest while in a bathtub, the running or splashing of hot water could cause a postmortem injury.

(Doc. 8-9 at 20). The state appellate court therefore found that Dr. Young was "only precluded from testifying to a few specific details of his conclusions" and, provided as example, "that some of M.T.'s injuries could have been from hitting her face and forehead on the bathtub faucet" (*Id.*). However, the Missouri Court of Appeals determined that these "minute" details were completely dependent on Petitioner's hearsay account of the events to police (*Id.*). Therefore, the Missouri Court of Appeals concluded the trial court did not abuse its discretion in finding that the State's cross-examination did not open the door for the defense to admit Dr. Young's opinion testimony based solely on Petitioner's hearsay statements to police (Doc. 8-9 at 21). The explanation given by the Missouri Court of Appeals warrants deference and is not a contrary or unreasonable application of federal law. Pursuant to Federal Rule of Evidence 703, "an expert may rely on otherwise inadmissible hearsay evidence in forming his opinion if the facts and data upon which he relies are of a type reasonably relied upon by experts in his field." *Arkwright*

*Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997). However, if the facts or data would otherwise be inadmissible, the Court must determine "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Upon review of the transcript, it is clear that Dr. Young testified at length, for example, to which of M.T.'s injuries were antemortem and which ones were postmortem (*See, e.g.,* Doc. 8-3 at 1-5,7). While Dr. Young was not permitted to testify that the injuries were specifically caused by M.T. hitting the faucet, upon review of the deposition of Dr. Young, it is clear that this specific opinion would be based on the 911 call alone and thus Petitioner's hearsay statements (Doc. 8-4 at 42). Such "de facto testimony" in the form of hearsay is clearly impermissible as unduly prejudicial. *See Garner v. Fellowes Mfg.*, No. 05-3137-CV-S-ODS, 2006 WL 6869325, at *1 (W.D. Mo. Oct. 25, 2006). Therefore, the Court finds that the Missouri Court of Appeals' decision is not contrary to or an unreasonable application of the law and the Court will deny Ground 5 as not cognizable in a federal habeas petition.

Accordingly, the undersigned will deny Petitioner's Grounds 1-5 as non-cognizable.

**B. Procedural Default**

Ground 6 is procedurally defaulted and may not give rise to federal habeas relief. To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Id.* at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id.* at 1022 (quoting *Gray v.*

*Netherland*, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Although Petitioner raised Ground 6 before the state court on direct appeal, the Missouri Court of Appeals noted that Petitioner conceded that this point was not preserved for appeal but nevertheless reviewed the claim for plain error (Doc. 8-9 at 21). However, under Eighth Circuit law, a state court's discretionary plain-error review of unpreserved claims cannot excuse a procedural default. *Clark*, 780 F.3d at 877; *see also Floyd v. Griffith*, No. 4:15CV1145 JCH, 2016 WL 199078, at *1 (E.D. Mo. Jan. 15, 2016) (finding petitioner's failure to raise a claim of suggestive identification procedures in a motion for new trial, and the appellate court's review of the claim only for plain error, constituted a procedural default). Thus, the undersigned finds that Ground 6 is procedurally defaulted and will deny this ground.

### III. CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability will not be issued. 28 U.S.C. § 2253.

Dated this 21st day of August, 2018.

      /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE